IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KANSAS CITY TERMINAL RAILWAY COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 12-0396-CV-W-ODS ) |
| RAZORBACK RAIL SERVICES, INC., | ) ) ) |
| Defendant. | ) |

**ORDER AND OPINION DENYING DEFENDANT'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE, TO ABSTAIN OR POSTPONE**

Pending is Defendant's Motion to Dismiss, or in the alternative, to abstain or postpone the exercise of the Court's jurisdiction. For the following reasons, the Motion (Doc. #11) is denied.

I. BACKGROUND

The facts alleged in the Complaint construed in the light most favorable to the Plaintiff indicate the following. This suit arises from a relationship between: Plaintiff, Kansas City Terminal Railway Co. ("KCT"); Defendant, Razorback Rail Services, Inc. ("Razorback"); Charles E. Mader ("Mader"); and others.

Prior to the formation of Razorback, TranSystems Corp. employed Mader as an engineer, and in that role he performed work for KCT. At the time, Mader had a friendship with KCT's then-president, William Somervell ("Somervell"). While a TranSystems employee, Mader advised John Bell, Patrick Steere, and Edward McIntosh that KCT was not satisfied with certain vendors' services. Mader, Bell, Steere, and McIntosh then discussed forming a business to provide services to KCT, which led to the formation of Razorback in November 2006. KCT alleges that Mader owned thirty

percent of the company's stock, but did not contribute any capital in exchange for his interest in the company.

Razorback began performing services for KCT with Somervell's approval. In the fall of 2007, Mader's employment with TranSystems terminated. He became an independent contractor for KCT and eventually a KCT employee. Mader never disclosed to the KCT Board of Directors that he had an ownership interest in Razorback, nor did Razorback inform KCT of this fact. In June 2009, Somervell retired from KCT and Mader was named President of KCT and was appointed to its Board of Directors.

From approximately September 2007 through at least 2010, KCT alleges that Razorback, Mader, and others engaged in schemes to defraud KCT. These activities included: (1) charging KCT for construction and renovation services performed by Razorback and Mid-America Car, Inc. on Mader's personal properties; (2) Razorback financially contributing to Somervell's civil war reenactments in an effort to influence Somervell to assign additional KCT work to Razorback; and (3) transporting scrap material owned by KCT to various scrap recycling companies in return for cash, which was subsequently provided to Steere and Mader.

In January 2012, KCT internally investigated allegations that Mader was involved in fraudulent activities. On February 1, 2012, federal and state investigators appeared at KCT's offices and served a search warrant upon Mader for a search of his office. The search warrant stated that it related to violations of federal criminal statutes, including conspiracy, mail and wire fraud, money laundering, and transportation of stolen goods. The day after the execution of the search warrant, Mader was placed on administrative leave, and shortly thereafter Mader's employment was terminated and KCT discontinued using Razorback as a vendor.

On April 4, 2012, KCT filed its Complaint alleging five causes of action: (1) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962(c)); (2) conversion; (3) fraud and deceit; (4) unjust enrichment; and (5) money had and received. Razorback filed a Motion to Dismiss, or in the alternative, to abstain or postpone the exercise of the Court's jurisdiction. KCT filed its Response to

Razorback's motions on August 6, 2012. Razorback failed to file a Reply and the deadline for doing so has passed. The Court now considers Razorback's motion.

II. DISCUSSION

Razorback's Motion makes three requests: (1) to dismiss for failure to state a claim; or in the alternative (2) to abstain pursuant to Colorado River abstention; or (3) to postpone the proceeding until the parties have gone through mediation.

A. Motion to Dismiss

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claim for relief must be "plausible on its face," meaning it must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Razorback alleges that KCT's RICO count fails to state a claim.[1] Specifically, Razorback argues that for KCT to establish liability under RICO, it must prove the existence of an enterprise that is distinct from Razorback. The Racketeer Influenced and Corrupt Organizations Act ("RICO") prohibits a "person" associated with an "enterprise" from participating in the affairs of the enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c). This has been interpreted as requiring that the named defendant cannot also be the entity identified as the enterprise. United HealthCare Corp. v. American Trade Ins. Co., 88 F.3d 563, 570 (8th Cir. 1996); see also Atlas Pile Driving Co. v. DiCon Financial Co., 886 F.2d 986, 995 (8th Cir. 1989).

Here, KCT does not allege that Razorback is simultaneously a RICO enterprise

---

[1] Defendant filed a multitude of extrinsic materials including affidavits and other exhibits in its Motion to Dismiss. The Court cannot consider these materials without converting the 12(b)(6) Motion to Dismiss into a Rule 56 Motion for Summary Judgment. The Court disregards the extrinsic materials in issuing its Order and Opinion.

3

and a RICO defendant. The alleged enterprise consists of Razorback, Mader, and others. KCT has pled facts alleging that Razorback was distinct from the enterprise. E.g., Complaint ¶¶ 15, 17-19, 24   Defendant's Motion to Dismiss is denied.

B.  Colorado River Abstention

In the alternative, Defendant moves the Court to abstain pursuant to the Colorado River abstention doctrine contending that prior parallel proceedings exist in state court. However, beyond invoking the doctrine's name, Defendant provides no further analysis. The Court's independent review of the law reveals that abstention is inappropriate.

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)). This is because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id. Colorado River abstention is only appropriate when there are: 1) parallel state and federal actions; and 2) exceptional circumstances by applying a six-factor test. Fru-Con Const. Corp. v. Controlled Air, Inc., 574 F.3d 527, 534 (8th Cir. 2009) (citing Colorado River, 424 U.S. at 817-18).

As a threshold matter, the Court must determine whether there are pending parallel state and federal proceedings before Colorado River is implicated. Id. at 535. State and federal proceedings are parallel when "substantially similar parties are litigating substantially similar issues in both state and federal court." Id. The Eighth Circuit requires more precision and, thus, "the pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient." Id. (citing Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coop., Inc., 48 F.3d 294, 297 (8th Cir. 1995)). "Rather, a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented

4

in the federal court." Id. (citing TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 592 (7th Cir. 2005)).

In this case, the parallel proceeding requirement has not been met. The pending Jackson County, Missouri state-court proceeding is not a parallel proceeding because "substantially similar parties" are not involved. KCT filed a state court petition against Mader, two entities in which Mader had an ownership interest, and Midwest Scrap Management, Inc, but not against Razorback. Because Razorback is not a party in the pending state court proceeding, there are not "substantially similar parties" to both suits and, thus, a parallel state court proceeding does not exist.

The Court need not make an "exceptional circumstances" analysis because the necessary parallel state court proceeding prerequisite has not been met. Razorback's Motion to Abstain is denied.

## C. Postpone Jurisdiction to Allow for Mediation

Razorback's final request asks the Court to postpone the exercise of jurisdiction and order the parties to exhaust their contractual obligation of mediation. Defendant contends that mediation is a condition precedent to litigation.[2]

The parties' agreement does not mandate that KCT and Razorback mediate before KCT filed its Complaint. Rather, the agreement provides that the parties should mediate only in one of two instances: (1) when there is a dispute between KCT and

---

[2] The relevant language of the services agreement between KCT and Razorback states as follows:

> Disputes. Subject to each party's right to terminate for cause . . . in the event (a) a dispute arises between Contractor and KCT regarding the application or interpretation of any provision of this Agreement or (b) KCT is dissatisfied with the quality of the work performed by any of the Contractor Parties, the aggrieved party shall promptly notify the other party to this Agreement of the dispute. If the parties fail to resolve the dispute within a reasonable amount of time after receipt of such notice, each party shall proceed to non-binding mediation . . . .

Def. Ex. D ¶ 8.3 (Dkt. 12-4).

5

Razorback regarding the application or interpretation of any provision of the agreement; or (2) if KCT is dissatisfied with the quality of Razorback's work. The dispute in this case does not regard the interpretation or application of the Agreement, nor does it involve the dissatisfaction with the quality of Razorback's work. Further, the contractual agreement is not binding on the Court and the Court is unwilling to delay this proceeding. The Court denies Defendant's request to postpone.

### III. CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion in its entirety.

IT IS SO ORDERED.

DATE: August 30, 2012

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

6